(No. 31935)

MAX WEISBERG *et al., vs.* CHALMER C. TAYLOR *et al.,* Appellees.—(MAX WEISBERG, Appellant.)

*Opinion filed June 18, 1951.*

Aronson & Aronson, of Chicago, (Leo E. Aronson, of counsel,) for appellant.

Ivan A. Elliott, Attorney General, of Springfield, (Robert J. Burdett, and John T. Coburn, both of Chicago, of counsel,) for appellees.

Mr. Chief Justice Simpson delivered the opinion of the court:

The plaintiffs, Max Weisberg, a retail liquor dealer, and Stag Beer Corporation, an Illinois corporation and a wholesale beer distributor, filed their suit in the circuit court of Cook County under section 57½ of the Civil Practice Act (Ill. Rev. Stat. 1949, chap. 110, par. 181.1,) against the Illinois Liquor Control Commission, seeking a declaratory judgment that section 4 of article VI of the Illinois Liquor Control Act is unconstitutional. The Attorney General filed a motion to dismiss the suit on behalf of the liquor commission. The circuit court allowed this motion and an order dismissing the suit was entered. The constitutionality of a statute being involved, Weisberg appealed directly to this court. The Stag Beer Corporation does not join in the appeal.

The statute involved, (Ill. Rev. Stat. 1949, chap. 43, par. 122, sec. 4,) summarized as far as is pertinent to the questions here involved, provides, among other things, the following: (a) makes it unlawful for any retailer to accept, receive, or borrow money or anything of value, or accept or receive credit from any manufacturer, importing distributor, or distributor, except ordinary merchandising credit, for a period not to exceed thirty days; (b) makes it unlawful for a manufacturer, importing distributor, or distributor, to do any of the things set forth

in (a); (c) forbids a retailer, delinquent for thirty days or more in his merchandising accounts, to purchase or acquire alcoholic liquor, and forbids a manufacturer, distributor, or importing distributor, to knowingly grant or extend credit or sell alcoholic liquors to such delinquent retailer; (d) requires the purchase price of beer sold to a retailer to be paid in cash on or before the delivery of the beer; (e) provides that beer sold to distributors, or importing distributors, shall be paid for in cash on or before fifteen days after delivery of the beer; (f) exempts from the act sales to customers or purchasers outside the State of Illinois so long as such liquor is actually transported and delivered to points outside the State; (g) provides that no right of action shall exist for the collection of any claim based upon credit extended to a distributor, importing distributor, or retail licensee, contrary to the provisions of this section of the act.

Weisberg, hereinafter called plaintiff, contends that this statute contravenes section 2 of article II of the Illinois constitution, and the fourteenth amendment to the constitution of the United States, for the reason that its provisions are arbitrary, unreasonable, confiscatory, and do not involve or bear any relationship to the health, safety, and welfare of the people; that it is an improper exercise of the police power; that it creates an arbitrary and discriminatory classification; that it discriminates against retail licensees in requiring them to buy beer for cash, but permits distributors to purchase the same on credit; that the act makes the Illinois Liquor Control Commission a collection agency, and grants special privileges, immunities and franchises to the distributors of whiskey, wines and spirits not granted to dealers in beer, in violation of section 2 of article II of the State constitution, and that it violates section 11 of article II of the same constitution, which requires all penalties to be proportioned to the nature of the offense. The Attorney General filed his motion to

strike, and the circuit court allowed the motion. The plaintiff then elected to stand by his complaint and an order dismissing the complaint was duly entered.

At the outset, we may mention that the plaintiff concedes that he has no inherent right to sell intoxicating liquor; that liquor licenses are not property rights, and that in curbing the evils of the liquor traffic the State may impose regulations on the liquor business more stringent than on other businesses. It is the plaintiff's position, however, that the State, nevertheless, may not, through the abuse of its police power, impose conditions which require the relinquishment of constitutional rights. This statute, the plaintiff says, does just that, in that its provisions bear no direct and substantial relationship to the public health, safety, or welfare.

The plaintiff concedes, and, indeed, it is now well recognized, that the State may, in curbing intended evils, impose regulations on the liquor traffic more stringent than would be permitted or allowable in other businesses. (*Baim* v. *Fleck,* 406 Ill. 193; *The Great Atlantic and Pacific Tea Co.* v. *Mayor of Danville,* 367 Ill. 310; *Weksler* v. *Collins,* 317 Ill. 132; *Davis* v. *Mass.* 167 U.S. 43; *Packard* v. *Banton,* 264 U.S. 140.) Notwithstanding this fact, the imposition of such restraints, even though more rigid than permissible in other occupations, must nevertheless be in keeping with constitutional restrictions. Our first inquiry, therefore, is whether or not the imposition of credit restrictions has any relationship to the public health, safety, or welfare within the police powers of the State. The mere statement of the proposition that the extension of credit by a creditor to a debtor does impose on the debtor an interest, supervision, power and influence on the part of the creditor proves itself. Indeed, this has been judicially recognized in *Sullivan* v. *Cann's Cabins,* 309 Mass. 519, 36 N.E. 2d 371, 136 A.L.R. 1236, where the Massachusetts court stated: "Its purpose appears to

have been to avoid the evils believed to result from the control of retail liquor dealers by manufacturers, wholesalers, or importers through the power of credit. Those evils do not, as a rule, depend upon the nature of the consideration out of which the credit arose. They depend upon the power of the creditor over the debtor."

The evils of the "tied house" have long been recognized and most, if not all, of the States, including our own, have prohibited the furnishing by manufacturers or distributors of buildings, bars, equipment, or loans of money to a retailer. The restriction or curbing of credit by legislative enactment is but a logical extension of these prohibitions and is directly connected with the evils long recognized in the "tied house." Moreover, few people, if any, would deny that the restriction of credit reduces the power to buy and a reduction in the power to buy reduces the volume of sales. Credit restrictions on a nationwide basis are inaugurated on the theory that they will ultimately reduce sales and the consumption of goods. If the legislature, therefore, believes that the restrictions here imposed will reduce the volume of sales and tend to promote temperance rather than intemperance, then we cannot say as a matter of law that such a conclusion has no connection with the public welfare, safety·or morals, even though we may doubt that it will accomplish in full such result. It is, therefore, our considered opinion that the credit relations here imposed do have a direct connection and relationship to the protection of the public health, safety and welfare. Moreover, we have said as recently as our May term, 1950, in *Baim* v. *Fleck,* 406 Ill. 193, the following: "It is for the legislature to determine when and where conditions exist requiring an exercise of police power to meet existing evils and, when the legislature has acted, a presumption arises that the act is a valid exercise of such power." We cannot say that there is no reasonable basis for the conclusion of the legislature that credit extended

by a manufacturer, importer or distributor to a retailer has not within itself inherent evils which may be suppressed or controlled by the exercise of the police power.

The plaintiff says, however, that permitting a credit of fifteen days to distributors in the sale of beer, while denying credit to retail venders of beer, is an arbitrary, discriminatory, and unreasonable classification. The problem of what is or what is not a reasonable classification has been before the courts many times. An ordinance denying a license to sell liquor at retail in grocery stores and meat markets, but permitting such license in other retail establishments was held valid by this court in *The Great Atlantic and Pacific Tea Co.* v. *Mayor of Danville,* 367 Ill. 310, and the court there pointed out that the ordinance applied equally to all grocery stores and meat markets. In *Ziffrin, Inc.* v. *Reeves,* 308 U.S. 132, 60 S. Ct. 163, the court upheld a Kentucky statute restricting liquor shipments to common carriers and prohibiting transportation of liquor by contract carriers. It was said that this regulation was within the police power of the State, was a proper classification, and did not violate the due process clause of the Federal constitution. In *Baim* v. *Fleck,* this court sustained the statute requiring the use of a container with a minimum capacity of one fluid ounce and containing at least one fluid ounce at the time of the sale, even though this statute exempted from its provisions sales made on boats and railroad cars, and there held that such exemption was not an arbitrary or unreasonable classification.

In *Tarantina* v. *Louisville and Nashville Railroad Co.* 254 Ill. 624, a statute permitting liquor in drawing rooms and parlor cars on trains but prohibiting drinking in day coaches was upheld as a reasonable classification. In *Goesaert* v. *Cleary,* 335 U.S. 464, 69 S. Ct. 198, the United States Supreme Court upheld a Michigan statute prohibiting the licensing of a female as a bartender unless she was the wife or daughter of the male owner of a licensed liquor

establishment. It was there held that such statute afforded the equal protection of the laws and was a proper classification. That the functions of distributors and retailers and the scope of their respective activities are quite separate and distinct is abundantly clear. The application of the statute falls equally upon all members of the same class. In so doing, it does not violate any constitutional prohibitions against the equal protection of the laws, nor is it in any manner arbitrary or discriminatory against members of the same class.

Our next question is whether or not the no-credit provision with respect to beer and the fifteen-day credit limitation on distributors of beer discriminates between such dealers as compared with distributors and retail dealers of other alcoholic beverages. Historically, the problem of the "tied house" was coupled more with the breweries than with the distilleries. (*United Breweries Co.* v. *Price*, 197 Ill. App. 289.) The interest of a particular brewery in promoting its product in a given area went to the point of determining location, asserting control over the licensee, and, through the power of credit and the use of equipment, it was, in fact, in the practical retail sale of beer. These things were all prohibited by the legislature. Historically, therefore, there is a sound basis for distinguishing between beer and other alcoholic beverages. The volume of any single brand or product of any single distillery of whiskey, or wine, or spirits, used in a single tavern is hardly sufficient to interest the distillery in the active control and management of that establishment. Most of such products are shipped from a distance. Beer, on the contrary, is more localized than are other alcoholic beverages. The interest of the brewery in acquiring trade in its local area is considerably more self-evident. There is, however, we believe, historically and otherwise, a sound basis for the distinction and classification here made by the legislature.

We cannot say that, in drawing that distinction and imposing the credit restriction, the legislature has acted in an arbitrary or discriminatory manner in seeking to avoid a recurrence of the evil which was historically known to them.

It is urged that even though the thirty-day credit provision is good, the prohibition against cash sales or purchases so long as the delinquency exists is unconstitutional and has no relation to the health, safety, or morals of the public and tends in no manner to prevent, abate or relate to the evils of a "tied house." This legislation, it is said, does not regulate the amount of liquor that may be purchased from any one house on credit, but it is the delinquency that is being regulated. It is further said that such a regulation affords the merchant no chance to salvage his business once he is delinquent, that it is not a restriction on credit, or even a prohibition of credit, but it is the denial of a duly licensed merchant to do business for cash. This provision, as well as the provision denying a cause of action to a wholesaler or manufacturer selling contrary to the provisions of the act, is in the nature of penalties or sanctions. They are conditional or additional penalties, and annexed to the law to produce obedience to that law. They are wholly inoperative in any case so long as the credit provisions of the statute are obeyed. It is the act of the party himself in disobeying this credit restriction which brings down on his head his inability to purchase for cash and upon the wholesaler his inability to collect. The one provision may incidentally benefit the wholesaler, and the other may incidentally benefit the retailer, but they are both a part of a legislative scheme to secure enforcement of the credit provision of the act.

During the days of prohibition, we held that auxiliary or incidental penalties such as the confiscation of the vehicle used in transportation, or enjoining the use of the building

in which illegal operations were conducted, in addition to a penalty of fine and imprisonment, did not violate a constitutional provision requiring penalties to be proportioned to the nature of the offense. (*People* v. *Kawoleski,* 310 Ill. 498; *People* v. *Elliott,* 272 Ill. 592.) We have already observed that the right to sell liquors is permissive only and the regulations may be much more stringent than those permitted in other businesses. We cannot here say that the means employed in this act by the legislature to secure obedience to the credit provisions of the act are unreasonable, discriminatory, or lack the necessary relation to the police power of the State. The act operates equally and impartially upon manufacturers, upon importing distributors, upon distributors, and upon retailers. It likewise operates equally and impartially upon the distributors of beer and upon the retailers of beer. The legislature may well say that we do not want anyone engaged in the retail sale of beer who has to depend upon credit for the operation of his business. It may very well say that it does not want any retailer to sell for cash for so long as he is indebted to his suppliers beyond the thirty-day period. By so providing, the legislature does not make the Liquor Control Commission the collector of delinquent accounts. It provides merely additional sanctions or penalties against those who violate the legislative rules and regulations prescribed for their permissive right to engage in that business.

It, therefore, appears that the statute here complained of is not in violation of any of the constitutional provisions as here asserted. The judgment of the circuit court of Cook County is, accordingly, correct, and it should be, and it is, hereby affirmed.

*Judgment affirmed.*