55 So.2d 716 (1951)
PICKERILL et al.
v.
SCHOTT, Director of the Beverage Department.
Supreme Court of Florida, en Banc.
December 18, 1951.
*717 Caldwell, Parker, Foster & Wigginton, Tallahassee, and Arnold, Matheny & Butt, Orlando, for appellants.
Lawrence Renfroe, Tallahassee, W.J. Sears and J. Turner Butler, Jacksonville, for appellee.
MATHEWS, Justice.
On October 9th, 1951, the appellants, who are retail liquor dealers, purchased on credit $640.74 of merchandise from McKesson-Robbins, Inc., a wholesale liquor dealer of Jacksonville. The appellants did not pay for this merchandise within the time required by Section 561.42, Florida Statutes 1949, F.S.A. It is unnecessary to encumber this record by quoting this Statute in full. It is known as the "Tied House Evil" law. It prohibits manufacturers, wholesalers and distributors from having any financial interest in retailers, directly or indirectly, and also limits the extension of credit to retailers to ten days after the calendar week in which the sale is made. If payment is not made as required, the law makes it the duty of distributors to report the delinquency to the Beverage Department within three days. This department is then required to notify the delinquent retailor of such notice and if he fails to pay, or show cause before the Beverage Director why same should not be paid, then further sales to him are prohibited.
The law in question provides that good and sufficient cause to prevent such action by the Beverage Department may be made by showing payment, failure of consideration, or any other defense which would be considered sufficient in a common law action. The retailer is allowed five days within which to show such cause in writing and request a hearing. During this period he is restricted to cash sales. If he fails to show cause, all further sales, both cash and credit, are prohibited.
The Act makes ample provision for review of the decision of the Beverage Department where good and sufficient cause within the limits of the Statute is attempted to be shown and the ruling is adverse.
If a review as provided by the Statute is sought within five days after the hearing provided for by the Statute then prohibition of sales is suspended until the review or appeal is disposed of.
There is no dispute as to the facts. The appellants were indebted for liquors purchased and they were not paid for within the time required by law. There was no contention that they had any defense to the payment for the liquor; such as, failure of consideration, or they had been paid for, or any other defense which would be considered sufficient in a common law action. Their sole contention is that the law is unconstitutional and within the five days after being notified of delinquency they advised the Beverage Department that the credit law was unconstitutional and requested the Director to give them a hearing on that question. The Director denied the hearing because he had no jurisdiction to hold a hearing unless there was some defense to the payment of the claim within the limits of the Statute.
The appellants then filed suit for temporary and permanent injunction in Orange County attacking the constitutionality of the Act. The Chancellor denied the prayers for the injunctions, granted a motion to dismiss the bill and upheld the constitutionality of the Act. An appeal was taken from this order.
Pending the appeal, appellants made application to this Court for a Constitutional Writ to stay the enforcement of the Act and the orders concerning sales pending the appeal.
*718 This Court has heretofore denied the application for Constitutional Writ. See Supreme Court Rule 33, 30 F.S.A., Wingate v. Mach, 114 Fla. 380, 154 So. 192. State ex rel. Watson v. Lee, 150 Fla. 496, 8 So.2d 19.
On appeal the appellants contend that the Statute in question; that is, Section 561.42, known as the "Tied House Evil" law is unconstitutional in that it violates Sections 1 and 2 of the Declaration of Rights of the Constitution of the State of Florida, F.S.A., and the Fourteenth Amendment to the Constitution of the United States because: (1) it is arbitrary and discriminatory within a class designed to bring about an unjust personal advantage to the wholesalers in the liquor industry, as distinguished from a general public advantage; (2) it denies due process of law because there is no provision for a hearing of any kind before the appellee is required under the Statute to deprive the appellants of their business credit; (3) the orders of the appellee directed to the appellants and wholesalers prohibiting sales as provided for by the Statute constitute a violation of the right to contract and engage in business and are not reasonable restraints in the public interest, and are not reasonable exercise of the police power; and (4) that the the Act fails to provide for the right of review by the Courts in the event that the appellee is denied a hearing on the ground that the appellants failed to show in their request for a hearing a good and sufficient cause (the appellants assigned no cause within the limits of the Statute but asked for a hearing from the appellee on the question of the constitutionality of the Act).
The Chancellor answered all of these questions contrary to the contention of the appellants. The Chancellor was correct.
As all of the questions are so interwoven and connected, it is rather difficult to treat them separately. This Court has repeatedly held that a retail liquor license authorizing the purchase for sale and the selling of liquors is merely a privilege granted by the State pursuant to law under restricted terms, conditions and regulations imposed by the State because of injurious effect of the use of intoxicants on the health and general welfare.
In 48 C.J.S., Intoxicating Liquors, § 197, page 329, with reference to the "Tied House Evil", the author states: "Effect has been accorded to federal and state statutes making it unlawful for manufacturers or wholesalers to have an interest in retail liquor stores, to loan money or extend credit, for a period in excess of thirty days, to a retailer, or to offer or give a bonus, premium, or compensation to an officer, employee, or representative of the buyer to induce the buyer to purchase from the seller to the exclusion of goods of competitors; or to statutes containing other provisions of like character respecting business relations between retailers and manufacturers or wholesalers. Statutes of this nature are aimed at the evil known as the `tied house'; and their purpose is to prevent the integration of retail and wholesale outlets and to remove the retail dealer in intoxicating liquors from financial or business obligations to the wholesaler, with the exception of ordinary commercial credit for liquors sold."
It is significant to note that the original Section 561.42, which was Section 4 of Chapter 16,774, Laws of 1935, was the original "Tied House Evil" law in this state. The purpose of this Act was to prevent monopoly or control by manufacturers or distributors of the retail outlets for the sale of intoxicating liquors. The original Act prohibited such manufacturers and distributors from having any "financial interest, directly or indirectly, in the establishment or business of any vendor licensed under the beverage law", and also prohibited any assistance "by * * * gift, or loan of money or property * * or * * * rebates * * *."
This Act was amended in 1949 by Chapter 25,340, which is now Section 561.42 under attack. This amendment in 1949 was nothing more or less than a further attempt on the part of the legislature to regulate as far as practical the "Tied House Evil", by prohibiting the control of retail outlets by manufacturers, wholesalers and distributors by regulating credit to such retailers.
*719 The manufacturers, wholesalers or distributors could exercise control by the granting or withholding of credit to retailers just as effectively as they could by the actual lending of money to the retailers or the investment of money in the retailers' business. The calling of loans, the extension or the granting of credit may be just as powerful in exercising control as the actual ownership of a controlling interest in a retail business, or the lending of money to establish or operate such business.
It was not the purpose or intent of the Act to grant a special privilege to wholesalers, manufacturers, or distributors denied to others but it was to prevent as far as possible by regulation an evil which existed, and the legislature has determined that this regulation is in the public interest and is a proper exercise of the police power. There is nothing unreasonable or arbitrary about this regulation, and there was no abuse of legislative discrimination.
Similar legislation has been adopted in the states of Alabama, Arizona, Kansas, California, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, New Jersey, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas and Wisconsin. One of the best reasoned opinions on this question will be found in the case of Weisberg v. Taylor, 409 Ill. 384, 100 N.E.2d 748, 750, decided by the Illinois Supreme Court in June, 1951. In that case the Court said: "The evils of the `tied house' have long been recognized and most, if not all, of the States, including our own, have prohibited the furnishing by manufacturers or distributors of buildings, bars, equipment, or loans of money to a retailer. The restriction or curbing of credit by legislative enactment is but a logical extension of these prohibitions and is directly connected with the evils long recognized in the `tied house.' Moreover, few people, if any, would deny that the restriction of credit reduces the power to buy and a reduction in the power to buy reduces the volume of sales. Credit restrictions on a nationwide basis are inaugurated on the theory that they will ultimately reduce sales and the consumption of goods. If the legislature, therefore, believes that the restrictions here imposed will reduce the volume of sales and tend to promote temperance rather than intemperance, then we cannot say as a matter of law that such a conclusion has no connection with the public welfare, safety or morals, even though we may doubt that it will accomplish such result. It is, therefore, our considered opinion that the credit relations here imposed do have a direct connection and relationship to the protection of the public health, safety and welfare. * * *"
See also to the same effect from the Connecticut Supreme Court, State v. Zazzaro, 128 Conn. 160, 20 A.2d 737, decided in June, 1941; and from the Rhode Island Supreme Court, Sepe v. Daneker, 76 R.I. 160, 68 A.2d 101, decided in August, 1949; and from the Massachusetts Supreme Court, in James J. Sullivan, Inc., v. Cann's Cabins, 309 Mass. 519, 36 N.E.2d 371.
Appellants contend that the Act denies to them due process because they could not have a hearing in accordance with their wishes. There is no merit to this contention. They boldly assert that the purpose of a suit in Orange County was to test the constitutionality of the law in question. The Act gave them an opportunity to have a hearing if they claimed that they had paid the bill, or that there was a failure of consideration, or for any other defense which could be considered sufficient in a common law action. They asked for no hearing upon any of these questions. They asked for a hearing before the Beverage Director to determine the constitutionality of the Act. There was no duty placed upon the Beverage Director to grant a hearing to the appellants on this question. Not only is it true that the Beverage Director was under no duty but he had no right to grant any such hearing. It was the duty of the Beverage Director to observe the law as he found it until in a proper proceeding its constitutionality is judicially passed upon. See State ex rel. Atlantic Coast Line R. Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A.L.R. 362; City of Pensacola v. King, *720 Fla., 47 So.2d 317, 318; Steele v. Freel, 157 Fla. 223, 25 So.2d 501.
As a matter of fact the appellants have had their day in Court and have pursued a proper remedy to question the constitutionality of the Act in question. The suit which they instituted is not properly a review of the orders of the Beverage Director denying them a hearing on constitutional questions but properly considered, it is an independent suit to test the constitutionality of the Act in the particulars heretofore pointed out.
Although the question was not raised in the pleadings or briefs, there was a suggestion at the time of oral argument on the merits that there may be some defect in the title and such defect may be covered in the case of Foley v. State, ex rel. Gordon, Fla., 50 So.2d 179. This case was decided in January, 1951, and construed Section 16.19 F.S. 1941, F.S.A. In 1951 the legislature had before it the case of Foley v. State, supra, and it adopted the Attorney General's revision "as the only * * * statute law of this state under" Title 1, Florida Statutes 1951. See Chapter 26,484, Laws of Florida 1951.
In any event the title to the Act was sufficient. The original Beverage Act of 1935 was held by this Court to be a taxing as well as a regulatory statute intended to have a uniform operation throughout the state. Sproul, Tax Collector v. State ex rel. Smith, 153 Fla. 892, 16 So.2d 109. In the case of Langston v. Lunsford, 122 Fla. 813, 165 So. 898, 899, this Court held: "[This Act is] designed to cover the field of both regulation and taxation". The liquor industry is one industry and the regulation and taxation of such an industry are so closely related as to be, for all practical purposes, one and the same subject, and properly connected with the subject of the liquor industry.
We have carefully examined and considered all of the contentions of the appellants and find that they are without merit. Section 561.42, Florida Statutes, F.S.A., does not violate any of the provisions of the State or Federal Constitution, as contended in this proceeding and the Chancellor was correct in denying application for temporary injunction and dismissing the bill of complaint.
Affirmed.
SEBRING, C.J., and TERRELL, CHAPMAN, THOMAS and HOBSON, JJ., concur.
ROBERTS, J., not participating.