## Parkway Distributing Company Liquor License Case.

Argued November 12, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Thomas J. Shannon,* Assistant Attorney General, with him *Edward J. Osterman,* Special Assistant Attorney General, and *Walter E. Alessandroni,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*H. A. Specter,* with him *S. David Litman,* and *Litman & Litman,* for appellee.

Opinion by Watkins, J., December 16, 1964:

This is an appeal by the Pennsylvania Liquor Control Board from an order of the County Court of Allegheny County reversing an order of the Board suspending for twenty days the Importing Distributor's license No. ID-54 issued to Parkway Distributing Company, a corporation.

On July 25, 1962, the board issued a citation against the corporation, the pertinent parts of which read as follows: ". . . Whereas the board is in possession of facts which lead it to believe that you have violated the provisions of the Liquor Code (Act of Assembly approved April 12, 1951, P. L. 90), as amended, and the rules and regulations adopted pursuant thereto, in the following manner: 1. You by your servants, agents or employes purchased malt or brewed beverages on credit on or about March 6, 19, 20, 21, 22, 26; April 3, 17, 27; May 1, 23, 1962 and on divers other occasions within the past year . . .".

At the hearing before the board the evidence disclosed that the licensee purchased malt and brewed beverages on the dates in question and in payment delivered checks to the sellers which were subsequently dishonored by the bank for insufficient funds. Upon receipt of notice of dishonor, the licensee paid the sellers the sums represented by the checks. The board found that this evidence constituted sales on credit and suspended the license.

We are at a loss to know why the Pennsylvania Liquor Control Board did not cite this licensee specifically for violation of the amendment added in 1961, June 15, P. L. 423, §2, 47 PS §4-493 (26) which made it illegal for a licensee "to make, draw, utter, issue or deliver or cause to be made, drawn, uttered, issued or delivered, any check, draft or similar order, for the payment of money in payment for any purchase of malt or brewed beverages when such . . . licensee . . .

has not sufficient funds in, or credit with, such bank,
. . .".

The citation proceeding was instituted pursuant to
§471 of the Act of April 12, 1951, P. L. 90, as amend-
ed, 47 PS §4-471 known as the Liquor Code which
provides, inter alia, "upon learning of any violation of
this Act, . . . by any licensee . . . the board may . . .
cite such licensee . . . to show cause why such license
should not be suspended or revoked . . . upon such
hearing if satisfied that any such violation has oc-
curred or *for other sufficient cause,* the board shall
immediately suspend . . .". (Underlining, writers)

The specific violation charged in the citation was
brought under the Act as amended, 1961, June 15,
P. L. 423, §1, 47 PS §4-493 (2), the pertinent part of
which reads as follows:

"It shall be unlawful—

. . .

"For any licensee, his agent, servant or employe,
to sell or offer to sell or purchase or receive any liquor
or malt or brewed beverages except for cash, . . . Pro-
vided further, That nothing herein contained shall be
construed to prohibit the use of checks or drafts drawn
on a bank, . . . by licensees in payment for any malt
or brewed beverages . . .".

The corporation appealed to the County Court of
Allegheny County and, after hearing de novo, the court
below held that the evidence of the list of checks that
were dishonored because of insufficient funds did not
prove credit purchases, and further that although the
evidence did prove violation of §4-493 (26) of the
Liquor Code which made it unlawful to issue checks
in payment for beverages when the licensee has not
sufficient funds in the bank, the penalty was illegally
imposed because the evidence supported a violation
other than that charged in the citation so that the de-
fendant was denied due process because of the lack of
essential notice.

We disagree with the conclusions of the court below. It is true that we can no longer treat the credit prohibition as requiring " 'cash' means 'cash on the barrel head' " as indicated by Judge RENO in *Edelbrew Brewery, Inc. v. Weiss,* 170 Pa. Superior Ct. 34, 38, 84 A. 2d 371 (1951), because the amendment provides "that nothing herein contained shall be construed to prohibit the use of checks . . . drawn on a bank . . . by licensees in payment for any malt or brewed beverages." But the *Edelbrew* case is still authority for the proposition that it is illegal under the Liquor Code to use any device including a check or checks to avoid the prohibition and whereby the result is an actual extension of credit.

In the instant case we have a course of business conduct whereby fourteen checks were issued by the licensee during a three-month period which were not honored by the bank upon which they were drawn. The record also shows that there were seven to twenty days involved between the date of purchase and the date of payment. The pattern was the same in every instance in that the checks were deposited and were marked N.S.F. There were seven instances where the same check was redeposited by the payee; two instances where the original check was lifted and replaced by a certified check; three instances where the check was lifted and redeemed by cash; and two instances where new checks were issued to make good the bad ones. The court below held, "A 'check' is payment of an obligation at the time it is delivered while 'credit' denotes the creation of an indebtedness to be discharged in the future." However, the N.S.F. checks did not pay the obligation but postponed it, and when, as here, they are issued with sufficient regularity to establish a pattern, we may conclude that the licensee is using this device to create an indebtedness to be discharged in the future and so circumventing the

Commonwealth's prohibition of the use of credit in this business.

At the same time the credit section of the Liquor Code was amended (47 PS §4-493 (2)), the worthless check section was added (47 PS §4-493 (26)), so that the issuance of checks N.S.F. was made a specific violation of the Liquor Code.

The court below held that the evidence did support a violation of the worthless check section but sustained the appeal on the ground that: "The basic issue is whether the Board may lawfully impose a penalty of suspension against a licensee, where the citation issued charges violation of one subsection of the Liquor Code, and the evidence supports a charge of violation of another and different subsection of the Liquor Code. In short, did appellant have due notice as an ingredient of due process of law in the proceedings against it?"

This question has already been decided by this Court and is controlled by *Hankin Liquor License Case,* 202 Pa. Superior Ct. 100, 195 A. 2d 164 (1963), in which Judge WOODSIDE said, at page 103: "The fact that the citation does not specifically allege 'an illegal Sunday sale' does not prevent the court from examining the facts and from concluding that the acts of the licensees constituted an illegal sale. The citation set forth above is sufficient to put the licensees on notice that their unusual method of dispensing liquor was being challenged by the board as illegal."

The situation in the instant case is stronger than that in the *Hankin* case. Here the licensee is put on notice that its habit of issuing N.S.F. checks is being challenged by the board and the testimony presented at the hearing before the board amply alerted the corporation so that it could not help but be aware of the exact nature of the charges. " 'The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were de-

nied we are governed by the substance of things and not by mere form.' " *Alpha Club of West Philadelphia v. Pa. Liq. Cont. Bd.,* 363 Pa. 53, 58, 68 A. 2d 730 (1949).

We further said in the *Hankin* case, supra, pages 103, 104: "There are several basic principles involved in determining whether the licensees' conduct was ground for a suspension. In the first place, this case does not involve a criminal penalty, but the temporary withdrawal of a privilege granted to the licensees by the Commonwealth. 'There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages.' Tahiti Bar, Inc. Liquor License Case, 395 Pa. 355, 360, 150 A. 2d 112 (1959). The legislature decreed that the Liquor Code 'shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose.' Liquor Code of April 12, 1951, P. L. 90, §104 (a), 47 P.S. §1-104 (a)." And further at page 104: "The board is authorized to suspend a liquor license upon learning of any violation of the Liquor Code and certain other specific statutes and 'upon any other sufficient cause shown.' Liquor Code, supra, §471, 47 P.S. §4-471. Although the constitutionality of such a broad power might normally be questioned, it has been accepted by the courts in liquor license suspension cases." (Citing cases)

The order of the court below is reversed and the Pennsylvania Liquor Control Board's order of suspension is reinstated.