**MAYHUE'S SUPER LIQUOR STORE, INC., Plaintiff-Appellant,**

v.

**Don MEIKLEJOHN, As Director, Beverage Department, State of Florida, et al., Defendants-Appellees.**

**No. 27237**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

May 15, 1970.

---

9. But see United States v. Atherton, 2 S.S.L.R. 3334 (9th Cir. 1969); United States v. Prescott, *supra.*

Alan R. Schwartz, Daniel S. Pearson, Robert C. Josefsberg, Miami, Fla., for plaintiff-appellant.

David J. Bauer, State Beverage Department, Jesse F. Warren, Tallahassee, Fla., Frates, Fay, Floyd & Pearson, Scott, McCarthy, Steel, Hector & Davis, Miami, Fla., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this case to enjoin enforcement of portions of the Florida liquor regulation statutes forbidding or restricting the granting of credit to retail liquor vendors, we review the order of a 3-Judge Court designated pursuant

to 28 U.S.C.A. § 2281. That Court dismissed Appellant's complaint with a simple declaration "that there is no substantial federal question presented for determination." [1] Simultaneous appeals were taken to the Supreme Court and to this Court. The Supreme Court dismissed the appeal for want of jurisdiction. Mayhue's Super Liquor Stores, Inc. v. Meiklejohn, 1969, 394 U.S. 319, 89 S.Ct. 1187, 22 L.Ed.2d 307. We affirm the District Court.[2]

## I.

As is so often the case in the contemporary efforts of courts to make a little order and efficiency out of the inbuilt chaos from a statutory machine that was not designed for the intense use demanded by today's expanding invocation of federally secured constitutional claims, the underlying substantive question is all but forgotten. Our problem is not so much the validity of the decision by the 3-Judge Court as much as is what the Court decided. This is so because, just as with the Supreme Court, consideration of the merits is inextricably bound up with the question of jurisdiction. This comes about from the basic question which never seems to go away: [3] Is this a case for a one-Judge or 3-Judge Court? The complications come from the fact that this question turns on the merits or, more accurately perhaps, the total absence of merits. The substantive test is simple in terms, though not so simple in application—unless the claim of validity/invalidity is *insubstantial* a 3-Judge Court is required.[4] Once a 3-Judge Court is convened the case goes through a one-step or two-step process each of which has a decisive consequence upon appellate jurisdiction. Step one answers the "insubstantiality" inquiry. If the Court holds that it is insubstantial, then under contemporary standards of the Supreme Court [5] the sole review of that very limited question is the Court of Appeals. Wilson v. City of Port Lavaca, 1968, 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636; Mengelkoch v. Industrial Welfare Comm., 1968, 393 U.S. 83,

1. The full order, which was signed by all three Judges, reads:
   "PER CURIAM:
   It affirmatively appearing from the allegations of the complaint and the oral argument of counsel for the respective parties that there is no substantial federal question presented for determination by this court, the complaint is
   DISMISSED."

2. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, Part I.

3. It is often a court-raised threshold question. See, e. g., Allen v. State Bd. of Elections, 1969, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1; Whitley v. Williams, 1968, 392 U.S. 902, 88 S.Ct. 2052, 20 L.Ed.2d 1361; Allen v. Johnson, 5 Cir., 1969, 413 F.2d 1218, 1219.

4. "The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. Mosher v. City of Phoenix, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062. The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'"
   Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152, 153.

5. "Contemporary" suggests no disparagement, just a recognition that the result has been reached by dead reckoning, not a clearly revealed, laid out course from the prior rule to the one of today. This is well developed in Currie, Appellate Review of the Decision Whether or Not to Empanel a Three-Judge Federal Court, 37 U.Chi.L.Rev. 159 (1969).

89 S.Ct. 60, 21 L.Ed.2d 215. If, on the other hand, the Court holds that it passes the *Poresky* test, it must then determine on the merits [6] whether the statute under scrutiny is valid or invalid. The *sole* review of that decision is in the Supreme Court. 28 U.S.C.A. § 1253. See Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794; Stratton v. St. Louis Southwestern R. Co., 1930, 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135; C. Wright, Federal Courts § 50 (2nd ed 1970). And this is so even though the District Court may have erred in holding it to be a 3-Judge case for it is clear that a judicial review of the "merits" is not within the power of the Court of Appeals and that its role is narrowly limited [7] to testing a *denial* of 3-Judge status.[8]

Our problem is not just the sometime difficult one of one-Judge versus 3-Judge. Rather, ours is principally one of determining just what the order means. The order is plain enough in indicating constitutional validity. But what was the judicial mechanism of that declaration? Is the decretal statement "that there is no *substantial* federal question for determination by *this* Court" merely a verbal variant of *Poresky* insubstantiality? Or was it a shorthand declaration that there was not a substantial enough showing to overcome the traditional notion that a statute begins with a presumptive validity? If it was a *Poresky* determination, the order would normally take the

form of an expressed dissolution of the 3-Judge Court with the case being remitted to the single Judge, not a dismissal presumably on the merits, F.R. Civ.P. 41(b), by an order signed by three Judges. On the other hand, the use of the term *"this Court"* may well have been purposeful as the indicator that the claim was not one for a court of three Judges.

■ But we would be loath to overemphasize either the absence of some words or the presence of others. After the usual judicial travail we conclude that the 3-Judge Court decided that the claim was insubstantial in the *Poresky* sense and the case was not one for a 3-Judge Court, and that the order is the functional equivalent of an order of the single-Judge Court on the merits of the complaint. That was the reading the Supreme Court must have given it. To give it any other reading would lead to some strange, if not curious, consequences. Thus, if we are to conclude the attack was "substantial" enough to pass *Poresky*, we could not review the merits of that decision on the merits. If, in addition, we concluded that the order was a 3-Judge determination on the merits, we obviously could not reverse and remand to secure just such a consideration. All we could do would be dismiss for want of jurisdiction. The upshot would be that any appellate review would be completely denied—unless on application for discretionary certiorari the Supreme Court could be per-

6. Most frequently this is strictly a law point, often on the face of the statute. Sometimes factual, evidentiary materials are needed. The presence or absence of an evidentiary hearing is no tell-tale on whether the "merits" have been passed on.

7. In the absence of a reviewable final or interlocutory order mandamus to compel a District Judge to certify the case to the Chief Judge. 28 U.S.C.A. § 1651 may, some believe, be available. See Currie, note 5, *supra*, at 164.

8. In Hargrave v. McKinney. 5 Cir., 1969, 413 F.2d 320, 327 we said:

"Regardless of our personal reactions to the merits of plaintiffs' position and regardless of the novelty of the theories which support their position, we cannot say that their view of the taxing scheme is beyond challenge. We do not sit as a three-judge district court to determine whether plaintiffs' claim is good or bad on the merits. All we decide is that the claim is such an arguable one as to be 'substantial' within the Poresky definition. Cf. Schneider v. Rusk, 1963, 372 U.S. 224, 225, 83 S.Ct. 621, 9 L.Ed.2d 695."

suaded that on such reading of the order its earlier dismissal for want of jurisdiction was improvident.[9]

The confusion resulting from the District Court's order and the Supreme Court's action is not necessarily the product of the procedure of the District Court. The confusion is inherent in the 3-Judge statutes and their application to present-day problems. There will be confusion regardless of what procedure is used.[10] And such confusion is especially apparent concerning appeals from a one-judge and/or 3-Judge order. Whatever the Court said, even perceptive counsel appealing a dismissal by one judge or by three would have trouble ruling on the possibility that he was going to the wrong court, and hence might feel that prudence required appeals to both this Court and the Supreme Court. See C. Wright, Federal Courts § 50 (1970); Currie, note 5, *supra.*

## II.

The Appellant seeks to enjoin the enforcement of portions of Florida's "Tied House Evil" statutes, Florida Statutes. § 561.42 et seq., F.S.A. This Act in general terms prohibits a manufacturer or distributor from having a financial interest in the business of a licensed vendor and from assisting such vendors "by any gift, or loan of money or property of any description or by the giving of any rebates of any kind whatsoever." Retail vendors were prohibited from accepting, either "directly or indirectly", such loans or gifts or rebates. The specific sections under attack are §

561.42, which prohibits the extension of credit for the sale of liquor beyond a 10-day period after the calendar week within which such a sale is made, and § 562.21, which prohibits any sale of beer or wine to a liquor vendor on any basis other than cash.

Typically, the Florida beverage laws (Florida Statutes 1969, F.S.A., Chapters 561 and 562) provide for certain kinds of licenses. Section 561.14 specifies that licensees shall be classified as (1) manufacturers; (2) distributors; (3) vendors; and (4) exporters. Section 561.34 sets out the kinds of vendors, i. e., on premises, off premises, railroads, etc. Of importance is that the "Tied House Evil Statutes" apply to each and every kind of vendor. Section 561.42 speaks of "any vendor", and § 562.21 applies to all "retail licenses." Under § 561.22 the same person may be licensed as a manufacturer and a distributor, but a manufacturer or a distributor may not be licensed as a retail vendor. Conversely, retail vendor may not be a manufacturer or distributor. These reflect a legislative determination that manufacturing and wholesaling of alcoholic beverages were not to be integrated with retail selling. Under this structure retailing is to be kept separate from manufacture or wholesaling. The only exception to the legislative rule is found in § 561.221, covering the situation, for example, where a manufacturer of wine has a wine-tasting facility contiguous to his winery.

The Appellants' equal protection attack is horizontal, vertical and a mixture of both. In effect the charge is

9. It may be faced with the same question in passing upon our determination that it was for a one-Judge, not 3-Judge Court, and that the 3-Judge Court so held.

10. As an example, a 3-Judge court perfunctorily convened to hear the case of O'Hair v. Paine decided that no constitutional question was presented. Therefore, *acting as a 3-Judge court*, it entered an order remanding the case to the initiating or resident Judge, who then dismissed the case by means of an opinion that gave as extensive treatment to the merits, O'Hair v. Paine, W.D.Tex.1969, 312 F. Supp. 434 [memorandum opinion dated December 1, 1969]. This procedure made it clear that the 3-Judge court considered the question insubstantial in the jurisdictional sense. Nonetheless, appellant simultaneously took her case to both this Court and the Supreme Court. The Supreme Court dismissed the case in language identical to that employed by it in this case. O'Hair v. Paine, 1970, 397 U.S. 531, 90 S.Ct. 1259, 25 L.Ed.2d 528.

that horizontally in the relation of wholesalers to retailers in other types of business enterprises there is neither severely restricted (10-day) credit as in the case of sales of liquor nor absolute prohibition of credit as in the case of sales of beer or wine to retail vendors. Vertically, the charge complains of the different treatment as between sales of liquor (10-days) and sales of beer and wine (prohibition) on credit. These charges are in effect made on behalf of all retail vendors since there is no contention of preference or discrimination as between any one or more distributors and particular retailers.

In the *Poresky* quest we start from the historical fact that the liquor business has been the subject of severe legislative restraints. Courts have long recognized that the State has broad power to control the liquor business and restrict the scope of its operation,[11] Hornsby v. Allen, 5 Cir., 1964, 326 F.2d 605, 609, so long as the restriction is not arbitrary. See Mayhue v. City of Plantation, 5 Cir. 1967, 375 F.2d 447; Parks v. Allen, 5 Cir., 1969, 409 F.2d 210.

Regulations of the kind under scrutiny are common and have been upheld. See, e. g., Tom & Jerry, Inc. v. Nebraska Liquor Control Com., 1968, 183 Neb. 410, 160 N.W.2d 232; Fowler v. Harris, 1930, 174 Md. 398, 200 A. 825. And the Supreme Court of Florida has expressly done so in Pickerill v. Schott, 1951, 55 So.2d 716, cert. denied, 344 U.S. 815, 73 S.Ct. 9, 97 L.Ed. 634 as has the Florida Court of Appeals, Overstreet v. Lee, 1953, 152 So.2d 201.

The Florida Supreme Court emphasized that the purpose of the "Tied House Evil Act" was to prevent monopoly or control by manufacturers or distributors of the retail outlets of intoxicating liquors. The basic aim, so the Court declared, of the legislation is to prevent the manufacturers and dis-tributors from having any financial interest, whether direct or otherwise, in the establishment or business of any retail liquor vendor. The Court reasoned that the Florida legislature must have felt that regulating the credit which a manufacturer, wholesaler or distributor could extend to a retail liquor dealer would effectively prohibit the manufacturers, wholesalers or distributors from exercising control over the retail operation through the device of credit. As the Court saw it, by the use of credit manufacturers and distributors could exert as much pressure as if they were actually lending money to retailers. The Court summed it up in emphatic terms, "the legislature has determined that this regulation is in the public interest and is a proper exercise of the police power. There is nothing unreasonable or arbitrary about this regulation, and there was no abuse of legislative discrimination". 55 So.2d at 719.

This basic purpose, to divorce manufacturing-distributing activities of the liquor business from that of retailers, in the light of years of experience in many of the evils and problems of this traffic afforded a valid basis for legislative judgment. The size and economic resources of manufacturers-distributors in contrast to that of retailers entitled the legislature impliedly to conclude that the real, actual independence of retailers would be jeopardized by the granting of credit on improvident terms in amount or duration. Like considerations and legislative awareness of the volume of consumption of beer and wine and the circumstances under which they are sold to countless thousands of consumers justified a difference in treatment between sales of liquor to retailers on limited (10-day) credit and the absolute denial for beer and wine. And, of course, the legislature clearly has wide authority to treat similar and related problems dif-

---

11. The extent is illustrated by the relinquishment by Congress of its power to regulate this part of interstate commerce.

Brown, Free Will in the Frontiers of Federalism, 58 Mich.L.Rev. 999, 1011 n. 40 (1960).

ferently. Williamson v. Lee Optical, 1955, 348 U.S. 483, 488–499, 75 S.Ct. 461, 464, 99 L.Ed. 563, 572–573.

 We think that decades of history in the handling of this traffic and its social, economic and political consequences justified these distinctions and at this late date there can be no question about validity. Neither testimony nor three Judges was needed to reach this imperative conclusion. The decision of the one Judge upholding validity was proper for him to make and the result was proper.

Affirmed.