CARLING BREWING COMPANY, INC., Plaintiff-Appellant, *v.* GEORGE F. DOYLE DISTRIBUTING COMPANY, INC., Defendant-Appellee.

Second District (1st Division)   No. 75-522

Opinion filed August 17, 1976.

Joel A. Haber and Nicholas G. Dozoryst II, both of Chatz, Sugarman & Abrams, of Chicago, for appellant.

Richard S. Finn, of Finn, Geiger & Rafferty, of Waukegan, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff Brewing Company delivered two orders of beer to the defendant distributor on February 22 and 28, 1973, 2% discount in 10 days. The defendant has never paid and the plaintiff made no further deliveries and filed suit on November 2, 1973. The trial court entered summary judgment for the defendant on the ground that said delay in filing suit constituted an "extension of credit" beyond 30 days to a distributor, in violation of section 4 of the Illinois Dram Shop Act (Ill. Rev. Stat. 1973, ch. 43, par. 122). We disagree and reverse.

■■ The plaintiff, Carling Brewing Company, sold two orders of beer to the defendant, an importing distributor on February 22, 1973, and February 28, 1973. The invoices provided that there was a 2% discount if the merchandise was paid for within ten days. There was no other provision as to time of payment on the invoice and the defendant has not suggested that the parties made any specific agreement as to the date by which payment was due or as to the extension of credit. Accordingly, we assume that the parties intended to comply with the law and read into the contract a requirement that payment be made within 15 days as required by statute. See *Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 544, 165 N.E.2d 286; *Cook-Master, Inc. v. Nicro Steel Products* (1950), 339 Ill. App. 519, 532, 90 N.E.2d 657; *Gutowski v. Crystal Homes, Inc.* (1960), 26 Ill. App. 2d 269, 276-77, 167 N.E.2d 422 (ordinance); *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 794, 305 N.E.2d 236.

Both shipments were accepted by the defendant but the invoices were never paid and Carling made no further deliveries to the defendant.

It is not apparent from the record when the plaintiff first protested the defendant's failure to pay for the shipment. The plaintiff did not file suit to recover the price of the shipments until November 2, 1973. The defendant thereupon moved for summary judgment on the ground that the action, being filed 9 months after the transactions, was in violation of the Dram Shop Statute which prohibited the extension of credit for more than 30 days. The trial court granted the defendant's motion, ruling that while an extension of credit beyond the 30-day period is not illegal per se, a claim for payment based on extension of credit for a period exceeding the limit prescribed by the Liquor Control Act was not an enforceable debt.

It must first be noted that both the defendant and the trial court below referred to the wrong provision of section 4. That provision applies only

to retailers, not distributors. The parties on appeal, however, have correctly argued the effect of the 15-day limitation in the statute.

The sole issue on appeal is whether the defendant's failure to pay on time coupled with the plaintiff's failure to file suit for 9 months constituted an "extention of credit". Section 4 of article VI of the Dram Shop Act provides that all beer sold to an importing distributor shall be paid for by such importing distributor in cash on or before the 15th day after delivery and that no right of action shall exist for the collection of any claim based upon credit extended to an importing distributor contrary to the provisions of the section.

■■ As stated by the court in *Weisberg v. Taylor* (1951), 409 Ill. 384, 391, 100 N.E.2d 748, this provision (as well as the provision barring the retailer from purchasing more liquor while he is in default) "are conditional or additional penalties, and annexed to the law to produce obedience to that law. They are wholly inoperative in any case so long as the credit provisions of the statute are obeyed. It is the act of party himself in disobeying this credit restriction which brings down on his head his inability to purchase for cash and upon the wholesaler his inability to collect." Being penal in character, the provision must be strictly construed although the statute will at the same time be so construed as to suppress the mischief and advance the remedy. (See *Howlett v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708.) The mischief sought to be suppressed is the control of breweries over distributors and retailers, *i.e.*, the "tied house." As stated by the court in *Weisberg v. Taylor* (1951), 409 Ill. 384, at 387, 388, 100 N.E.2d 748:

> "The mere statement of the proposition that the extension of credit by a creditor to a debtor does impose on the debtor an interest, supervision, power and influence on the part of the creditor proves itself. Indeed, this has been judicially recognized in *Sullivan v. Cann's Cabins*, 309 Mass. 519, 36 N.E.2d 371, 136 A.L.R. 1236, where the Massachusetts court stated: 'Its purpose appears to have been to avoid the evils believed to result from the control of retail liquor dealers by manufacturers, wholesalers, or importers through the power of credit. Those evils do not, as a rule, depend upon the nature of the consideration out of which the credit arose. They depend upon the power of the creditor over the debtor.'

> The evils of the 'tied house' have long been recognized and most, if not all, of the States, including our own, have prohibited the furnishing by manufacturers or distributors of buildings, bars, equipment, or loans of money to a retailer. The restriction or curbing of credit by legislative enactment is but a logical extension of these prohibitions and is directly connected with the evils long recognized in the 'tied house.' Moreover, few people, if any,

would deny that the restriction of credit reduces the power to buy and a reduction in the power to buy reduces the volume of sales. Credit restrictions on a nationwide basis are inaugurated on the theory that they will ultimately reduce sales and the consumption of goods. * * *"

■■ When we consider the language, purpose and nature of the statute, it seems clear that while the statute imposes a duty upon the distributor to pay within 15 days, the brewer is not barred from collecting the debt by the mere fact the distributor defaults in this obligation. (*Potosi Brewing Co. v. Metropolitan Distributing Co.* (1950), 342 Ill. App. 131, 95 N.E.2d 529, *cert. denied.*) As already noted, the statute in forfeiting the brewer's right to money admittedly due is penal and thus should be strictly construed. It bars recovery when the brewer extends credit—the word "extends" requires an action on the brewer's part. Moreover, penalizing the innocent brewer who did not himself disobey the credit restrictions does not encourage obedience to the statute; to the contrary, it would discourage it since distributors by such disobedience could avoid their just debts. Even if the language of the statute could be read to bar recovery merely because the distributor failed to pay within fifteen days, we must prefer that construction of the statute which is reasonable and wholesome over a construction which produces injustice and mischievous results (34 Ill. L. & Pr. *Statutes* §116). Accordingly, we prefer an interpretation under which each party bears the burden of its own guilt rather than one where the purchaser's violation brings down the forfeiture on the seller.

For these reasons we agree with the court in *Sterling Brewers, Inc. v. Williamson* (Ky. 1954), 269 S.W.2d 249, which, in ruling that the brewery could recover under a statute similar to ours (except that no credit at all was allowed), despite its acceptance of post-dated checks after the buyer's failure to pay when the beer was delivered, stated at page 250:

"The statute, for one thing, obviously protects the brewer or wholesaler from the need of selling beer on credit in order to get or keep a customer, and refuses the assistance of society through the agency of its courts in effecting collection of such claims if the seller violates the statute by selling on credit. Furthermore, the seller is subject to a fine if he violates the statute by credit sales. KRS 244.990. While a sight draft, payment in advance by cash or a certified check or shipment C.O.D. would have removed all question of the transaction being tainted with illegal credit, the shipment of the beer on an invoice stamped 'cash on arrival' can hardly be considered a credit transaction. It was equivalent to saying 'you may have this carload of beer if you will remit the purchase price when you get it.' By accepting the beer, the

purchaser impliedly promised to remit the purchase price immediately in compliance with the terms of the invoice. *It was the purchaser who converted the sale into a credit transaction, not the seller. The seller sold the beer 'cash on arrival' which was no violation of the statute, and the statute, being a penal one, must not be enlarged by construction.* The checks subsequently accepted by the seller were not an extension of credit for the sale of the beer, but rather were an effort to collect a debt which had been created by the purchaser's breach of his contract to pay 'cash on arrival.'" (Emphasis added.)

On appeal, the defendant, however, apparently concedes that its failure to pay within 15 days did not render the debt uncollectable, but argues that the plaintiff by waiting as long as 9 months to file suit, impliedly extended credit, this unlawful extension of credit not coming at the end of the 15th day but somewhere in the 9-month period. However, neither point is supported by the statute. First, in other sentences of section 4, the legislature prohibits the "direct or indirect" extension of credit to retailers. However the words "direct or indirect" do not appear either in the clause requiring the distributor's payment to be within 15 days or that stating that no cause of action should exist for the collection of any claim based upon credit. Second, the statute sets up 15-day period in which the distributor must pay its debts. No other limitation period is expressly or implicitly created by the statute. Accordingly, if we rule that the failure to prosecute is an implied extension of credit, then we must rule that a suit not filed at the end of the 15th day or at the beginning of the 16th, at the latest, is too late—a ruling which is both absurd and contrary to public policy which is to discourage unnecessary litigation not to encourage it. There are no grounds in the statute for saying that a suit filed within 3 weeks of default is timely (see *Potosi Brewing Co. v. Metropolitan Distribution Co.* (1950), 342 Ill. App. 131, 95 N.E.2d 529, *cert. denied*), but that one filed within the statutory time for suit but several months after default is not.

Furthermore, the defendant's construction would render the requirements of the statute vague and uncertain, a result which must be avoided by court unless plainly shown to have been the inte tion of the legislature (*City of Nameoki v. City of Granite City* (1950), 408 Ill. 33, 95 N.E.2d 920). When would a delay in filing become an extension of credit—at the end of 1 week, 3 weeks, 3 months, 6 months, 1 year? The defendant does not attempt to answer the question but only contends that by 9 months there has been at some indefinite time in the past, an extension of credit, despite the absence of any overt act indicating plaintiff's intention to waive the default. There is a statute of limitations; there is the doctrine of laches; neither has been violated here. Yet the

defendant would have this court create a special statute of limitations just for him, not at the end of the 15-day period, the only time mentioned in the statute, but at some later date in no way mentioned in the statute. This the court is not willing to do.

■■ We agree that if the creditor actually extends credit beyond the 15-day period he will, pursuant to the statute, be barred from recovery. And actions after the 15-day period may be evidence that the creditor had extended an illegal credit to the distributor. But we hold that once the debtor, who has not been extended credit for more than the statutory period, breaches his obligation imposed both by contract and by statute by not paying within the 15 days, any delay in collection, at least in the usual instance, will not act as an extension of credit. The statute was not meant to act as a trap for the unwary or to foment needless litigation overloading our already overburdened courts.

The two cases relied upon by the defendant, *Vack v. Benjamin* (1952), 348 Ill. App. 131, 108 N.E.2d 499, and *In re Parkway Distributing Co.* (1964), 204 Pa. Super 514, 205 A.2d 660, are not in point. In *Vack*, the court held that the plaintiff could not recover a loan made to the defendant to allow him to buy drinks, the plaintiff keeping a tab on the defendant covering the drinks he did not pay for; this was done with the customers also. The court correctly found that the loan was a mere subterfuge to evade the provisions of the statute prohibiting the extension of credit for the purchase of liquor and clearly constitute "a shift or device" to evade the statute (Ill. Rev. Stat. 1951, ch. 43, par. 177). Obviously the bartender's activities flagrantly created the mischief that statute was designed to correct, that of keeping an intoxicated person from running up a big bill for drinks on credit. To the contrary, in this case there was no allegation or evidence of any acts performed by the plaintiff as a "mere subterfuge" to evade the provisions of the act. Unlike *Vack* where the plaintiff was willing to keep a tab rather than require cash, it was the defendant here who alone decided that the debt would not be timely paid. Nor was there any showing that the plaintiff customarily sells to distributors who do not pay and then delays for an unreasonable period of time in bringing suit.

*In re Parkway Distributing Co.* was not a suit to collect on the debt (which had been paid) but a prosecution by the Liquor Control Board to suspend the guilty importing distributor's license. The defendant had issued 14 bad checks in a 3-month period. The court ruled that where the checks were issued with sufficient regularity to establish a pattern, the licensee clearly was using that device to create an indebtedness to be discharged in the future and so circumvent the State's prohibition of the use of credit. In fact the issuance of worthless checks was specifically

forbidden by another provision of the Liquor Code. In our case, on the other hand, there is no repeated illegal activity performed with such regularity as to establish a custom.

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings.

Reversed and remanded.

GUILD, P. J., and SEIDENFELD, J., concur.