Opinion by
 

 Woodside, J.,
 

 This is an appeal by six owners of a motel from a decision of the Court of Quarter Sessions of Bucks County affirming the action of the Pennsylvania Liquor Control Board in suspending their hotel liquor license for 25 days.
 

 The board cited the licensees for encouraging and permitting “other persons to do on your licensed premises that which, under the provisions of the law, you are prohibited from doing, to wit: Give, furnish, serve or deliver liquor to persons during hours when you are prohibited by the Liquor Code from selling liquor,” on certain designated Sundays.
 

 The scheme devised by the licensees to permit customers to have liquor with their meals on Sunday was as follows: A customer would pay for a bottle of liquor at the bar of the licensees during a time when it could be legally sold. The customer’s name was then attached to the bottle by the employe of the licensees, and it was placed, sometimes opened and sometimes unopened, in the restaurant on a rack or shelf where there was a separate lock for each bottle. The lock was snapped shut and the only key was given to the customer. When the customer came to the restaurant for a Sunday meal, he would go to the shelf, unlock the bottle with his key, take it to his table and serve himself and his guests. Neither licensees nor their employes would touch the bottle at any time after it was first locked on the shelf, but they would provide the customer with glasses, ice and ginger ale to be used in drinking the liquor. When the customer was through using the bottle of liquor, he would return it to the shelf and lock it in place for use during a subsequent visit to the restaurant.
 

 The board concluded that this practice constituted a violation of the Liquor Code of April 12, 1951, P. L. 90, 47 P.S. §1-101 et seq. Upon appeal, the court heard
 
 *103
 
 the evidence of several liquor hoard agents who had each obtained bottles of Y.O. liquor for $14 each and served drinks to themselves and guests on several Sundays in the manner set forth. The licensees do not deny that the above procedure is followed, but contend it is not illegal. The court below concluded that the procedure constituted an illegal sale of liquor by the licensees and sustained the suspension. The appellants contend that they were not cited for an illegal sale, that the procedure does not constitute an illegal sale, and that the procedure does not constitute ground for a suspension.
 

 The fact that the citation does not specifically allege “an illegal Sunday sale” does not prevent the court from examining the facts and from concluding that the acts of the licensees constituted an illegal sale. The citation set forth above is sufficient to put the licensees on notice that their unusual method of dispensing liquor was being challenged by the board as illegal.
 

 There are several basic principles involved in determining whether the licensees’ conduct was ground for a suspension. In the first place, this case does not involve a criminal penalty, but the temporary withdrawal of a privilege granted to the licensees by the Commonwealth. “There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages.”
 
 Tahiti Bar, Inc. Liquor License Case,
 
 395 Pa. 355, 360, 150 A. 2d 112 (1959). The legislature decreed that the Liquor Code “shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accom
 
 *104
 
 plishment of this purpose.” Liquor Code of April 12, 1951, P. L. 90, §104(a), 47 P.S. §1-104(a).
 

 It is in the light of these pronouncements by the courts and the legislature that we must apply the statute to the facts. The appellants argue that there is nothing in the Liquor Code, supra, to prohibit the procedure followed by them. The board counters that there is nothing in the code which, allows such procedure. The code says, “Except as otherwise expressly provided, the purpose of this act is to prohibit . . . transactions in liquor, alcohol and malt or brewed beverages which take place in this Commonwealth, except by and under the control of the board as herein specifically provided, and every section and provision of the act shall be construed accordingly.” Liquor Code, supra, §104(c), 47 P.S. §1-104(c). Thus, transactions in liquor are lawful
 
 only
 
 to the extent that they are made lawful by the Liquor Code.
 
 Tahiti Bar, Inc. Liquor License Case,
 
 supra, 395 Pa. 355, 361, 150 A. 2d 112 (1959);
 
 Commonwealth v. Bienkowski,
 
 137 Pa. Superior Ct. 474, 479, 480, 9 A. 2d 169 (1939).
 

 The board is authorized to suspend a liquor license upon learning of any violation of the Liquor Code and certain other specific statutes and “upon any other sufficient cause shown.” Liquor Code, supra, §471, 47 P.S. §4-471. Although the constitutionality of such a broad power might normally be questioned, it has been accepted by the courts in liquor license suspension cases. See
 
 Reiter Liquor License Case,
 
 173 Pa. Superior Ct. 552, 554, 98 A. 2d 465 (1953);
 
 Commonwealth v. Lyons,
 
 142 Pa. Superior Ct. 54, 58, 15 A. 2d 851 (1940);
 
 Revocation of Marie’s License,
 
 115 Pa. Superior Ct. 256, 264, 266, 176 A. 254 (1934).
 

 The legislature expressed a clear intent to prevent liquor from being furnished in licensed restaurants on Sunday except in a few carefully stated exceptions. Attempts to circumvent this clear intent by some
 
 such
 
 
 *105
 
 scheme as the ingenuity of the appellants here devised was denounced by the Supreme Court many years ago when Mr. Justice Williams, speaking for a unanimous Court, said: “The furnishing of liquors on Sunday, or to any of the excepted classes, that is made punishable, is a furnishing in evasion of the law forbidding sales .... It would not help the cause of good morals if those who were forbidden to sell on Sunday could under some specious pretext profess to supply their customers without charge on that day.”
 
 Commonwealth v. Carey,
 
 151 Pa. 368, 372, 25 A. 140 (1892).
 

 Under the facts of this case, we can affirm without deciding that the procedure followed by the licensees constituted an actual “Sunday sale” of liquor. However, we agree with the court below that the procedure followed by the licensees in getting liquor to their customers on Sundays constituted an illegal sale in violation of the Liquor Code, supra.
 

 Section 406 of the Liquor Code, supra, 47 P.S. §4-406, provides, in relevant part, as follows: “Every hotel, restaurant or club liquor licensee may sell liquor ... by the glass, open bottle or other container, and in any mixture, for consumption only in that part of the hotel or restaurant habitually used for the serving of food to guests or patrons, and in the case of hotels, to guests, ... in their private rooms in the hotel .. .
 

 “Hotel and restaurant liquor licensees, other than those located in hotels in cities of the first and second class, . . . their servants, agents or employes may sell liquor . . . only after seven o’clock antemeridian of any day and until two o’clock antemeridian of the following day, and shall not sell after two o’clock ante-meridian on Sunday . . .”
 

 Judge Fullam, ably answers the argument of the appellants on whether there was a “Sunday sale,” and we adopt the following extracts from his opinion: “The
 
 *106
 
 appellants strenuously contend that the transactions outlined above do not constitute the sale of alcoholic beverages on Sunday in violation of the Act. The Board contends with equal vigor, inter alia, that such transactions do constitute sales of alcoholic beverages on Sundays. We agree with the Board.
 

 “Article 1, Section 102 of the Liquor Code, 47 P.S. §1-102 provides as follows: ‘ “Sale” or “Sell” shall include any transfer of liquor, alcohol or malt or brewed beverages for a consideration.’ We believe that the word ‘transfer’ as used in this definition includes the transfer of possession as well as title, and that a transfer of possession is not complete unless and until the customer’s dominion over the alcoholic beverage is sufficiently unfettered to enable him to consume the beverage without the necessity of any further action on the part of the seller. Appellants had a right to sell liquor by the open bottle, during lawful hours, but they could not lawfully permit the customer to remove the bottle from the premises. With respect to any liquor remaining in the bottle when the customer left the premises, it is clear that the customer’s dominion was no longer unconditional. His possession was no longer complete. For although the customer had the only key to the shelf compartment, the appellants had the only keys to the premises. By unlocking the restaurant doors on Sunday
 
 [1]
 
 and permitting the customer renewed access to his bottle on Sunday, the appellants enabled the customer to resume his undivided possession of the contents of the bottle. In our judgment, these actions by the appellants necessarily constituted, pro tanto, a transfer of the liquor on Sunday, in violation of the statute.
 

 
 *107
 
 “The appellants point ont that it is not a violation of the Liquor Code to sell a customer a drink shortly before closing time, for consumption after closing time. In that situation, however, the possession by the customer becomes complete and unconditional before closing time, and he remains in complete control of his purchase until it is consumed, without the necessity of any further action by the seller after the lawful closing time.
 

 “The appellants also point out that, as hotel licensees, they could lawfully sell liquor by the opened bottle to guests for consumption in their rooms, and there would be no violation of the law by the appellants even if it should develop that the liquor was consumed on Sundays, or that the guest removed the bottle from the establishment and consumed it elsewhere. Appellants are undoubtedly correct in their assertion, but only because an express provision in the statute permits sales to guests for consumption in their rooms, and does not require continued supervision of the beverage by the licensees after the sale is completed. The fact remains that, in the sales presently involved, the appellants could not lawfully make an unconditional delivery of the bottled liquor to the customer; the bottle could not be removed from the restaurant by the customer without putting the licensee in violation of the Code.
 

 “Accordingly, it is our opinion that the Board was correct in concluding that the appellants, on the occasions in question, violated the provisions of the Liquor Code which prohibit sales of alcoholic beverages on Sundays. This conclusion is based entirely upon the language of the Liquor Code and the definitions therein set forth, without resorting to less direct principles of statutory construction to derive the legislative intent. In further support of our conclusions, however, it might be pointed out that if appellants’ reasoning
 
 *108
 
 were correct, the statutory prohibitions against sales after hours and on Sundays would be meaningless, since it would undoubtedly always be possible for the licensee to sell by the bottle and have the purchaser serve his own ‘guests’ after hours. Moreover, appellants’ theory would confer upon every hotel and restaurant licensee the advantages of a club license, without any of the attendant safeguards. Such absurd consequences were obviously never intended by, and should not be imputed to, the legislature.”
 

 Decision affirmed.
 

 Watkins, J., dissents.
 

 [1]
 

 The licensees argued to the Superior Court that they did not “unlock” the restaurant doors on Sunday, claiming that the motel was open all the time. This is of no import. The licensees did control the premises, and thus the liquor on it, on Sundays as well as at all other times.