## Carpenter License

*Meyer, Brubaker & Whitman,* for appellant.

*Robert J. Wollet,* for Commonwealth.

GATES, P. J., May 12, 1966.—Robert Lytle is a salesman for Pennco Distillers, Inc., of Pennsylvania in Schaefferstown, Lebanon County. Not far from the distillery is the Mt. Trail Inn, licensed to Simon Carpenter. The inn is licensed as a hotel and has a restaurant and dining room, and their food service enjoys an excellent countywide reputation.

On April 13, 1964, Lytle was entertaining bar managers and potential customers of his employer by

showing them firsthand how Pennco's product is made. He characterized this as an educational trip for these men. As he had done several times before, following his presentation, he took his guests to dinner at the Mt. Trail Inn. There, they ate and drank heartily, running up a tally of $104.05. It was late in the evening when the festivities came to an end, and Lytle was presented with the tab. After examining the reckoning, he took issue with the cost of some of the drinks, but, since it was so late in the evening, he told Carpenter he would be back to adjust the bill. He did not offer to pay all or part of the account and left without paying any of it. Lytle returned several times thereafter to adjust the statement, but did not do so, because Carpenter was not there at the time. In the meantime, an agent for the Pennsylvania Liquor Control Board, while surveying the establishment, found the tab in the cash register and investigated the circumstances. Ultimately, the Liquor Control Board cited Carpenter for selling alcoholic beverages on credit.

Later in May of 1964, a local funeral director found himself with some unannounced guests at 9:30 p.m. He also found that he was wanting in alcoholic beverages to serve them. The retail liquor store was closed. In this imbroglio, he went to the Mt. Trail Inn, where he was known and had been a frequent prior customer, and confabulated the bartender into loaning him several bottles of liquor, which he promised to return promptly. The bartender made a note of the matter, indicating the name of the undertaker, the bartender's nickname, the date May 5, 1964, and the description of four items of alcoholic beverages. This memorandum was likewise found by the investigating agent and, upon further inquiry, the agent caused Carpenter to be cited for selling liquor for consumption off the premises as well as for selling it on credit.

After a hearing before an examiner, the liquor control board ordered a 25 day suspension to begin at 7:00 a.m. on Thursday, September 23, 1965, and ending at 7:00 a.m. on Monday, October 18, 1965. On September 17, 1965, an appeal was filed by Carpenter, and we issued our order of supersedeas. On January 4, 1966, the case was submitted to us by stipulation on the basis of the record taken before the examiner.

We shall first consider the April 13, 1964, citation, which the board found to be a credit sale in violation of the Act of May 15, 1956, P. L. 1587, sec. 1, 47 PS §4-493(2), which prohibits sales by licensees except for cash. However, the recorded testimony here clearly shows that there was no prearrangement for a credit sale. Neither Lytle nor Carpenter intended or contemplated that the transaction be a sale on credit. Lytle, though a regular customer, never asked for, nor received, credit on any prior occasion. The true situation here resulted from a series of misunderstandings. Lytle was shocked by the cost of his generosity and, in this state of mind, his keen eye functioned better than his brain, and he challenged the validity of some of the beverage items on the bill. He was unaware at the time that some of his guests were robust drinkers and had ordered supplemental portions of whisky in each glass. He was not cognizant of the fact that his actions might later be interpreted as an illegal credit sale when he refused to pay the bill until he had enough time to look over the bill with Carpenter and perhaps rectify differences.

On the other hand, Carpenter did not intend these sales to be credit sales. He fully intended that he would present his bill at the conclusion of the party and that he would be paid. After all, this was not a stranger to Carpenter. Lytle was a valuable customer who worked for a reputable local concern. Lytle had entertained at the inn before. He never asked for credit before, and Carpenter did not interpret his request on this

occasion as being a request for a delay in payment. In Carpenter's mind was the reasonably entertained thought that Lytle's 10 guests overreached Lytle's ability to pay in cash and that his request for adjustment was merely a ruse to avoid embarrassment in the presence of his customers by a disclosure that he did not have enough cash on his person to pay the bill. In reality, the situation was simply one of a customer refusing to pay the bill at the time. There was little, if anything, that Carpenter could have done under the circumstances. That he might have done something differently when viewed from the eyes of the members of the liquor control board is a soft impeachment of what he in fact did do. But we do not interpret what Carpenter did as a credit sale in violation of the liquor laws of this Commonwealth. Short of wrestling the man to the ground, relieving him of his wallet, and paying himself from its contents, if sufficient, there was not much that Carpenter could do at this point to change whatever character this sale developed at the time. What Carpenter did do was an innocent and understandable act of forebearing to raise an unnecessary commotion, since he was satisfied in his own mind that the bill would be paid. Certainly Carpenter did not intentionally violate any provision of the liquor control law.

However, the situation is quite different with respect to the second basis for citation. The board there concluded that licensee, his servants, agents or employes, sold liquor for consumption off the premises on May 2, 1964, and for credit. Appellant strenuously contends that the transaction involving the undertaker did not constitute a sale of alcoholic beverages or a credit sale in violation of the act. The board counters with eager vigor that the transaction does constitute a sale and a sale on credit.

Article I, section 102 of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §1-102, provides as follows:

" 'Sale' or 'sell' shall include any transfer of liquor, alcohol, or malt or brewed beverages for a consideration".

We are of the opinion that the word "transfer", as used in this definition, includes the transfer of possession as well as title, and that a transfer of possession is complete when the customer's dominion over the alcoholic beverage is sufficiently unfettered to enable him to consume the beverage without the necessity of any further action on the part of the seller. Such a transfer having taken place, a sale is complete within the intent of the act.

While it is true appellant had the right to sell liquor by the open bottle, it is equally true that he cannot lawfully permit a customer to remove the bottle from the premises: Hankin Liquor License Case, 202 Pa. Superior Ct. 100 at page 106.

Thus, when appellant's bartender transferred the liquor items to the undertaker, and he took them from the premises, promising to return or replace them promptly, a sale within the contemplation of the Liquor Code took place. The consideration for the transfer was, of course, the undertaker's promise to replace the items. Appellant confuses legal consideration with the making of a profit. True it is that replacing borrowed whisky in and of itself is not directly profitable, even though done for legal consideration. However, there is an oblique profit in that licensee is thereby encouraging future trade with the transferee.

The act for which Carpenter is here legally responsible, while perhaps seated in abstract concepts of friendship, is equally consistent with a profit motive. The undertaker was a regular customer of Carpenter, and Carpenter's refusal to accommodate the undertaker in his time of need might well have resulted in the termination of this profitable relationship. The granting of his illegal request would have the tendency

of encouraging future business. Under these circumstances, it is difficult to conceive of a more ungrateful borrower than one who would return the borrowed items to the barroom and leave without at least buying himself a drink. Perhaps Carpenter was not consciously aware of this analysis, but it is this kind of conduct which the code prohibits. The bartender's conduct under the circumstances is certainly understandable and humanistic but, nonetheless, a violation of the Liquor Control Act.

Having now determined that one of two bases for suspension is valid, it behooves us to examine into the severity of the punishment imposed under these revised circumstances. It is well established that it is within the power of the court of quarter sessions to modify a penalty, if the court's findings differ from those of the board: Legion Home Association of Monessen Appeal, 195 Pa. Superior Ct. 643; Lehigh Valley Brewery Workers Liquor License Case, 154 Pa. Superior Ct. 141. Since our findings and conclusions differ materially with those of the board, we are of the opinion that it is only fair, reasonable and proper for us to consider a modification of the suspension order.

The board based its suspension order of 25 days on their findings that the licensee violated two separate and distinct provisions of the Liquor Code on two separate occasions. We have concluded that there was a violation on one occasion in May of 1964, but that the alleged violation of April 13, 1964, was not substantiated by the facts or the applicable legal principles. Therefore, it is indicated that we reduce the length of the suspension.

Therefore, after due and careful consideration, we will make the following:

ORDER

And now, to wit, May 12, 1966, for the foregoing

reasons, the order of the Pennsylvania Liquor Control Board dated August 30, 1965, is modified, and it is the order of this court that the hotel liquor license #H-2115, issued to Simon Carpenter, for premises known as Mt. Trail Inn, situate in Heidelberg Township, Lebanon County, is hereby suspended for a period of 10 days beginning at 7:00 a.m., Monday, June 13, 1966, and ending at 7:00 a.m. on Thursday, June 23, 1966.