Commonwealth, Appellant, *v.* Backa.

Argued April 10, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Louis R. Paulick,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellant.

*Carl Max Janavitz,* with him *Joseph G. Kanfoush,* and *Janavitz, Janavitz & Kanfoush,* for appellee.

OPINION BY CERCONE, J., September 19, 1973:

The defendants, David Alton, John Backa and Daniel Backa were indicted and stood trial on a charge that they did "expose and keep for sale and offer for sale and did sell for consumption on the premises where sold, beer, not then and there being holder of a valid license in violation of Section 492, Subsection 2 of the Liquor Code". The uncontradicted facts appearing of record, as stated by the lower court in its opinion, are as follows: Officer Donald Kidd, an enforcement officer with the Pennsylvania Liquor Control Board, testified that at approximately 9:15 p.m. on July 11, 1971, he arrived at the premises known as the Alpine Ice Chalet located in Swissvale. He noticed a sign on the outside of the premises stating "Swimming, Dancing and Free Beer, $3.00". As he approached the entrance he was met by John Backa, who collected a

$3.00 admission fee. The officer then entered the premises and noted that there were approximately 150 to 200 patrons there. Daniel Backa was behind a makeshift bar and was dispensing plastic cups of beer. A band was playing and approximately 50 people were dancing. It was a rather cold night and only 5 people were swimming. Approximately one-half of the remainder of the patrons had beer cups in their hands.

On July 18, 1971, Officer Kidd returned to the same premises accompanied by Officers Falta and Ehenspear. As they approached they again saw the same sign posted. The officer paid $3.00 to John Backa and entered. This time the bar was being tended by David Alton. Approximately one-third of the patrons were dancing and about twice that many were holding beer cups. At approximately 10:00 p.m. a raid was conducted and John Backa and David Alton were arrested and the beer confiscated. Daniel Backa was arrested later. After being informed of his rights, John Backa stated that they did not possess a license to sell beer. Also implicit in the record and standing uncontested is the fact that the activities engaged in by the defendant did not constitute an isolated social event but represented a business activity engaged in with regularity.

It was the opinion of the court below that these facts did not sustain a finding of sale of the beer for a consideration. We cannot agree with this conclusion. It is our opinion and holding that there was a sale in violation of Section 492, Subsection 2 of the Pennsylvania Liquor Code of April 12, 1951, P. L. 90, Article 4, which provides: "it shall be unlawful for any person to sell to another for consumption upon the premises where sold or to permit another to consume upon the premises where sold, any malt or brewed beverages, unless such a person holds a valid retail dispenser's license or a valid liquor license issued by the board authorizing

the sale of malt or brewed beverages for consumption upon such premises."

The trial judge in reaching the conclusion that there was no sale laid emphasis on and gave great weight to the fact that no specific amount was stated to be a consideration for the beer, the court's opinion including statements such as "Officer Kidd admitted that once he was inside the premises he noticed no monetary consideration being exacted for the beer. At no time did he observe money passing between people obtaining the beer and the bartender . . . there is no evidence of such a sale to anyone on the premises for a specific consideration . . . nowhere in the testimony has the Commonwealth shown that a specific consideration was exacted for dispensing of the beer . . . it is not against the law to give away beer nor can it be construed against the law to offer beer as an inducement to attend a function . . . ."

This reasoning by the trial court assumes that the beer was in fact free because the sign said so. The court thus begged the very question which was before it for consideration, that question being: though no specific consideration is set forth and though the beer was stated to be "free," was there in fact included in the admission price a payment for the beer and was the method here employed of supplying beer to patrons for their consumption on the premises a sham and subterfuge for what was in fact a sale? The lower court admits that the activity here involved could be "construed as a sale of beer" but states, however, that it seems illogical that the defendant went to the trouble of renting a swimming pool, hiring a band, and employing off-duty police to check for the presence of minors just to sell beer. It would be more logical to assume that the beer was offered as an inducement to attend this affair. This being so, it cannot be said that any violation of the law has occurred."

However, we find that these very factors which the court considers as indicating that the serving of the beer was a mere inducement for the patrons to swim and dance are the factors which strongly and clearly reveal that the sale of beer to the patrons was the paramount intention of the parties. Contrary to the reasoning of the lower court, it would seem illogical that the defendants would have undertaken the trouble and inconvenience, and the great expenditure of giving away a large volume of beer (21 half-barrels were on the scene on the night of the arrest) with its further consequent expenditure of employing police to check for the presence of minors, just as an inducement to have patrons come to dance and swim on the premises. If inducement is the basis of the lower court's reasoning, then free beer or free liquor of any kind for that matter, under the same circumstances, could be dispensed without license by any bar, lounge, hotel or restaurant as an inducement to a patron's availing himself of its facilities. The proprietors of these establishments could all say, as the lower court judge said, "Would we go to the trouble of building these establishments just to dispense free liquor?" To allow this situation to flourish would be to invite utter confusion and contradiction of the legislative purpose of license requirements.

The fact that a few of the patrons did come to swim and dance and did not drink any beer does not negate the finding that the admission price included therein a consideration for the beer. Those patrons had the right to drink beer if they so chose because they had paid for it. A person being served in the restaurant may, without any reduction in the price of the meal, decline the potato included with the meal he has ordered, but that does not mean the price he paid for the meal does not include the cost of the potato.

We believe that the lower court erred in failing to find a sale in violation of the Liquor Code and improperly applied a rule of strict construction of the Code favorable to the defendant, thus choosing to ignore that the Pennsylvania Legislature, in promulgating that Code, specifically stated that the Code "shall be an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the Commonwealth and to prohibit forever the open saloon, and all the provisions of this act shall be liberally construed for the accomplishment of this purpose." The lower court states "if the Legislature intended to include this type of activity, it should have stated so;" however, the Legislature did so state when it enacted Section 492, Subsection 2, supra, and defined the word "sale" as therein used as including "any transfer" for "a consideration."

Implicit in the lower court's opinion is the view that the defendant's transactions in beer are to be deemed lawful unless clearly made unlawful by the Code. However, the law is to the contrary. Transactions in liquor are lawful only to the extent that they are made lawful by the liquor code. *Tahiti Bar, Inc., Liquor License Case,* 395 Pa. 355 (1959). This is for the reason that "there is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages." *Hankin Liquor License Case,* 202 Pa. Superior Ct. 100, 103 (1963); *Tahiti Bar, Inc., Liquor License Case,* supra, at 360.

A reasonable interpretation of the restrictions of the Pennsylvania Liquor Code requires us to hold that there was under the uncontradicted facts of record indeed a sale of the beer for consumption on the premises by persons not having a license to make such a sale.

It is not here material that the defendants were not shown of record to be the owner-operators of the busi-

ness. The prohibitions of Section 492, Subsection 2, make it unlawful, "for any person" to sell malt or brewed beverages for consumption on the premises unless that person holds a valid license to do so. It is undisputed that no liquor license was issued to anyone that would authorize sale of the beer by the defendants and it is undisputed that the defendants were personally actively engaged in the unlawful sale of beer. The Commonwealth, as admitted by the defendants in their brief, did prove that the defendant John P. Backa on the evenings of July 11th and July 18th, 1971 sold the tickets which were, as above stated, found to have included therein a consideration for the beer; and that defendants Donald F. Backa and David M. Alton on the evenings of July 11th and July 18, 1971, respectively, served the beer for which we find there was a consideration paid.

We therefore reverse the lower court's sustaining of the demurrer and remand the case to the lower court for further proceedings consistent with this opinion.