## Maitre'D, Inc. v. Pennsylvania Liquor Control Board

*Samuel H. High, Jr.*, for appellant.

*James J. Phelan, Jr.*, for Pennsylvania Liquor Control Board.

DITTER, J., May 3, 1967.—This case comes before the court on an appeal from a 15-day suspension of a restaurant liquor license. The suspension was based upon two citations which charged that minors were permitted to frequent the premises, sales were made to minors, contests were held on the premises and prizes given, sales were made on credit and sales were made on a Sunday.

As a result of a hearing before the court and the record of the proceedings before the board, the following findings of fact are made:

1. Appellant, Maitre'D, Inc., held a valid restaurant liquor license for premises at the Cheltenham Shopping Center, Washington Lane and Cheltenham Avenue, Elkins Park, Montgomery County, Pa., for the years 1963 and 1964.

2. The Maitre'D is a gourmet restaurant, featuring unusual dishes and expensive food. It can accommodate approximately 350 persons for dining. At its bar there is only room for 20 patrons. In the area of

the bar there is a combination cocktail lounge-restaurant which will seat approximately 125 persons.

3. On June 17, 1964, the Liquor Control Board issued citation no. 956, 1964, and on August 3, 1964, it issued citation no. 1216, 1964. Both citations were against appellant, and a hearing was held on these citations before the board on August 18, 1964.

4. On June 9, 1965, the Liquor Control Board filed an opinion and order in which it sustained the averments contained in the citations and ordered that appellant's license be suspended for a period of 15 days.

5. Thereafter, Maitre'D, Inc., filed an appeal, alleging that the board's findings were not supported by the evidence.

6. Appellant, by its employes, sold or furnished alcoholic beverages to two minors on January 10, 1964.

7. Appellant permitted a contest to be conducted at its premises, and permitted a prize to be awarded to the winner, on December 17, 1963.

8. Appellant conducted a contest and awarded prizes to the winners on June 2, June 9 and June 16, 1964.

## DISCUSSION

In appeals of this type, it is the duty of the court of quarter sessions to hold a hearing, make findings of fact and conclusions of law, and then exercise its discretion to sustain, reject, alter or modify the action of the Liquor Control Board: Act of April 12, 1951, P. L. 90, art. IV, sec. 471, as amended, 47 PS §4-471. It is the duty of the board to establish violations of its regulations or the Liquor Code by a fair preponderance of the evidence: Speranza Liquor License Case, 416 Pa. 348, 351 (1965).

There was only one witness who appeared before us. By stipulation, the notes of testimony of the hearing conducted by the board's examiner were admitted to complete the record. As a result of this evidence,

we concluded that there was nothing to sustain the board's finding that minors were permitted to frequent the licensed premises, that appellant had furnished or sold alcoholic beverages on a Sunday or that appellant extended credit during the one year that preceded its citation.

In support of the allegation that minors were permitted to frequent appellant's premises, there was testimony from seven persons. At the time of the alleged offense, January 10, 1964, all of them were in appellant's place of business, but only one had been there previously. So far as the testimony shows, these were the only minors among the approximately 200 patrons. According to the evidence, the only other occasion when there were minors on the premises was January 12, 1964. At this time, no definite number was indicated, and the officer referred to them as being children who were attending a Bar Mitzvah party. He indicated that they were with their parents.

We feel that this evidence was insufficient to establish the charge. To "frequent" means to visit often or to resort to habitually or to recur again and again, or visit more than once or twice. While it is not necessary to show that the same minor or minors come to the premises habitually, it must be established that as a course of conduct, the licensee permits minors to come to its establishment: Speranza Liquor License Case, supra. A course of conduct is not proven by showing that there were seven minors present on one occasion, only one of whom had been to the premises in the past.

The board also concluded that appellant furnished alcoholic beverages to persons on Sunday, January 12, 1964. The evidence showed that on this occasion, Herbert Liberty, one of the principal shareholders of Maitre'D, Inc., had arranged a Bar Mitzvah party for his son. Guests were invited in writing and members

of the general public were not admitted. Mr. Liberty produced receipts showing that he had purchased at retail all liquor that was served. He paid for the food and provided the waitresses and other persons who were engaged to serve the guests. In every respect, this was a private party held at appellant's restaurant. There was no payment for any alcoholic beverages, and the evidence shows that appellant furnished nothing except its rooms and possibly its kitchen equipment. There was nothing from which the board could have concluded otherwise, and its finding that the licensee had acted improperly was not supported by the evidence.

The board concluded that on August 15, 1963, and on January 10, 1964, appellant sold or furnished alcoholic beverages to minors. There was no testimony which would support the board's findings as to August 15, 1963. However, of the seven minors who testified concerning the incident of January 10, 1964, there were two, Susan Docktor and Bernard H. Listokin, who had alcoholic beverages. Miss Docktor, who, on January 10, 1964, was not quite 21, had a Cuba Libre, and Mr. Listokin, who was 21 the following November, had a Scotch and soda.

Appellant presented evidence to show the precautions which it took to prevent serving any person under 21 years of age, and argued that its type of business was not one where sales to minors would be made. The fact remains, nevertheless, that the board did show two sales, and this is enough to establish appellant's violation of the law: In re Revocation of Hotel Liquor License, 24 Cambria 133, 139 (1962). The fact that appellant tried to prevent sales to minors and that the violation was neither willful nor intentional is no defense: Commonwealth v. Koczwara, 188 Pa. Superior Ct. 153, 156 (1958). Under

the circumstances, the board was justified in concluding that appellant had made sales to minors.

Under section 207(i) of the Liquor Code, 47 PS §2-207(i), the board is empowered to make regulations as may be necessary for the efficient administration of the act. These regulations have the same force as the provisions of the act itself. The board's regulation 110, effective June 26, 1952, and amended May 19, 1955, provides, in part:

". . . no hotel, restaurant, or eating place license, shall hold or permit to be held, any tournament or contest of any sort on the licensed premises . . . nor directly or indirectly advertise, offer, award, or permit the award, on the licensed premises of any trophies, prizes, or premiums of any sort, for any purpose whatsoever".

Appellant is charged with a violation of this regulation. The evidence showed that on December 17, 1963, there was a contest for the purpose of picking a young lady to be "Miss Cheltenham". Twelve contestants appeared in street clothes, and later in bathing suits. The winner was awarded a small trophy and given an opportunity to have a permanent wave at a local beauty salon. The two runnerups were awarded gift certificates at local shops.

There was also testimony that in June of the following year, on three separate evenings, there was a twist tournament. On these occasions, the audience by its applause selected winners in that which might be described as a dance contest, or a nondance contest, depending upon one's point of view. The winners were given the opportunity to swim and have dinner at a local country club, and on the final day, were awarded dinners at the Maitre'D itself.

Appellant produced a letter dated November 10, 1960, from Horace A. Segelbaum, Esq., an Assistant

Attorney General. Mr. Segelbaum is recognized as having a considerable knowledge of the liquor laws of Pennsylvania, and he wrote the foreword on the Liquor Code which appears in volume 47 of Purdons Statutes. The letter in question stated Mr. Segelbaum's opinion that a beauty contest, *without prizes*, could be properly held in licensed premises, since it would be similar to a fashion show. Admittedly, this letter was not written in connection with either the "Miss Cheltenham" contest or the "twist" tournament, but was introduced by appellant to show that any violation of the regulations was not intentional. Obviously, appellant should not have relied upon such a letter. It specifically indicates that it is referring to a definite factual situation where there will be no prizes, and concludes by pointing out that there must be strict adherence to the plan submitted. In short, the letter has no applicability to that which appellant sponsored or permitted on its premises. The board properly concluded that the appellant was guilty of violating the regulation.

The board's final decision related to credit sales of alcoholic beverages. Section 4-493(2) of the Liquor Code provides that it shall be unlawful:

"For any licensee, his agent, servant or employe, to sell . . . any liquor or malt or brewed beverages except for cash, excepting credit extended by a hotel or club to a bona fide guest or member; or by railroad or pullman companies in dining, club or buffet cars to passengers, for consumption while enroute, holding authorized credit cards issued by railroad or railroad credit bureaus: . . ."

The evidence showed that in appellant's office there was a card file which belonged to the Maitre'D Diner's Club. There were 209 open accounts of the 500 cards in the file, the outstanding balance was almost

$10,400, and the amounts represented charges for alcoholic beverages and food. These cards were found on January 12, 1964, and dated back to April 1963. Later, Meyer Weiss, president and manager of appellant, and one of its stockholders, told the enforcement officers that he was a 50 percent owner of the Maitre'D Diner's Club, a separate organization, which is registered under the Fictitious Names Act. He also said that the Maitre'D Diner's Club extends credit only to customers of the Maitre'D restaurant. Mr. Weiss' partner in the Diner's Club is Clarence Turner, the father-in-law of Herbert Liberty. Mr. Liberty is Mr. Weiss' partner in Maitre'D, Inc.

Appellant introduced into evidence advertisements to indicate that other licensees permit the use of various credit cards by their patrons. Appellant argues that, since these licensees are reputable and well known restaurants, it must follow they would not break the law. Appellant, therefore, maintains that it has not violated this section of the code. Obviously, neither contention is valid.

It is quite apparent that the Maitre'D Diner's Club is merely a device for extending credit to those who patronize the Maitre'D. This is its only function; it is not used by its members when they visit other restaurants. All of its records are kept at the Maitre'D, and the Diner's Club is owned by the president of the Maitre'D and the father-in-law of his partner. It is illegal under the Liquor Code to use any device the result of which is an extension of credit: Parkway Distribution Company Liquor License Case, 204 Pa. Superior Ct. 514, 518 (1964).

In this regard it should be carefully noted that our decision is limited to the facts of this case.

General credit cards have become a part of American life within the past few years. They come un-

solicited through the mail. They can be obtained by almost anyone for every need or supposed need of life. Whether or not they can be legally used for the purchase of alcoholic beverages in Pennsylvania, however, is another thing, and since that matter is not before us, our decision does not necessarily apply to them. So far as the facts of this case are concerned, we conclude that appellant did extend credit, and the fictitious name registration of the Maitre'D Diner's Club was but a device to avoid the law.

Nevertheless, on the evidence before us, we cannot sustain the board's finding of fact with regard to credit sales. Specifically, the board concluded that appellant extended credit on July 1, 1963, and January 12, 1964. January 12, 1964, was the date of the Bar Mitzvah party for Mr. Liberty's son and the day on which the officers obtained the file of the Diner's Club. There were no sales of alcoholic beverages on that date, however. There was no testimony at all with regard to July 1, 1963.

A citation must be issued within one year from the offense charged, and, in this case, citation no. 956, 1964, was dated June 17, 1964. Although there were cards in the file which extended back to April 1963, there was no testimony that any were for sales after that time, nor within the time from June 18, 1963, to June 17, 1964, the maximum period covered by the citation. We could, of course, guess that there were sales on credit within that time, but it would only be a guess. It would have been an easy matter to establish by testimony, but the board failed to do so.

For the reasons indicated, we hereby make the following conclusions of law:

CONCLUSIONS OF LAW

1. The evidence did not support a finding that Maitre'D, Inc., permitted minors to frequent its prem-

ises on August 15, December 16, 1963, and January 10, 1964.

2. The evidence did not support a finding by the board that Maitre'D, Inc., sold, furnished or gave alcoholic beverages on Sunday, January 12, 1964.

3. There was no evidence to support the board's finding that Maitre'D, Inc., furnished alcoholic beverages to minors on August 15, 1963, but there was evidence to support its findings that alcoholic beverages were furnished to two minors on January 10, 1964.

4. The evidence supported the finding by the board that Maitre'D, Inc., permitted a contest to be held and permitted prizes to be given on December 17, 1963.

5. The evidence supported the finding by the board that Maitre'D, Inc., held a contest on the licensed premises and awarded or permitted the award of prizes on June 2, 9, and 16, 1964.

6. The evidence did not support a finding by the board that Maitre'D, Inc., had sold alcoholic beverages on credit on July 1, 1963, and January 12, 1964.

7. Under the circumstances, the penalty imposed by the Liquor Control Board, a suspension of appellant's liquor license for 15 days, was excessive and illegal.

8. The period of the suspension of appellant's license should be reduced to five days.

### DECREE

And now, May 3, 1967, the order of the Pennsylvania Liquor Control Board, dated June 9, 1965, suspending for 15 days Liquor License No. R-19596, issued to Maitre'D, Inc., is hereby reversed, and in lieu of the penalty set forth therein, it is ordered that the current renewal of Liquor License No. R-19596, issued to Maitre'D, Inc., shall be suspended for five

days at such period as shall be directed by the Pennsylvania Liquor Control Board.